UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

JACQUELINE URLI, DANIEL FAUST,
and DOUGLAS HERNANDEZ,

**DOCKET NO.: CV-20-960**

*Plaintiffs,*

**COMPLAINT**
*Jury trial demanded*

-against-

TOWN OF HEMPSTEAD SANITARY DISTRICT
NO. 7,BOARD OF COMMISSIONERS,
COMMISSIONER MATTHEW HOROWITZ (in his
official and individual capacities), COMMISSIONER
THOMAS LANNING (in his official and individual
capacities), COMMISSIONER JOHN MANNONE
(in his official and individual capacities),
COMMISSIONER AUSTIN GRAFF (in his official
and individual capacities), and COMMISSIONER
PATRICK DOHERTY (in his official and individual
capacities),

*Defendants.*

-------------------------------------------------------------------X

PLAINTIFFS JACQUELINE URLI (hereafter "PLAINTIFF URLI"), DANIEL FAUST

(hereinafter, "PLAINTIFF FAUST"), and DOUGLAS HERNANDEZ (hereinafter "PLAINTIFF

HERNANDEZ") and by and through their attorneys, the LAW OFFICES OF FREDERICK K.

BREWINGTON, as and for Complaint against the DEFENDANTS, TOWN OF HEMPSTEAD

SANITARY DISTRICT NO. 7 (hereinafter, "DEFENDANT DISTRICT"), BOARD OF

COMMISSIONERS (hereinafter, "DEFENDANT BOARD"), COMMISSIONER MATTHEW

HOROWITZ (hereinafter, "DEFENDANT HOROWITZ"), COMMISSIONER THOMAS

LANNING (hereinafter, "DEFENDANT LANNING"), COMMISSIONER JOHN MANNONE

(hereinafter, "DEFENDANT MANNONE"), COMMISSIONER AUSTIN GRAFF (hereinafter,

"DEFENDANT GRAFF"), and COMMISSIONER PATRICK DOHERTY (hereinafter,

"DEFENDANT DOHERTY") states and alleges as follows:

## PRELIMINARY STATEMENT

1.　　　This is a civil action seeking monetary relief (including past and ongoing economic loss), compensatory, special damages and punitive damages, disbursements, costs and fees for violations of the PLAINTIFFS' rights, brought pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.* (as amended); the First and Fourteenth Amendments of the United States Constitution ; 42 U.S.C. § 1983 (§ 1983); Article 15 of the Executive Law of the State of New York § 296 (New York Human Rights Law); wrongful termination; conspiracy and defamation.

2.　　　Specifically, PLAINTIFFS allege that the collective DEFENDANTS, directly acted and/or allowed its agent, employee, representative and/or officers to act maliciously and unconstitutionally, enacting discriminatory policies, sought to and did deprive PLAINTIFFS of rights protected by federal and state laws through a pattern of discrimination, retaliation, misrepresentation, misinformation, harassment, character assassination, creation of a hostile workplace, conspiracy, abuse and manipulation of laws, rules and regulations, in retaliation for PLAINTIFFS speaking out against, and opposing, discrimination, which caused PLAINTIFFS to suffer the following injuries:

- Violations of PLAINTIFFS' various statutory rights, including those protected by Title VII of the Civil Rights Act of 1964, Article 15 of the Executive Law of the State of New York (Human Rights Law) §§ 290 and 296 including discrimination based on gender, sexual harassment, hostile work environment and retaliation;

- Violations of PLAINTIFFS' constitutional rights under the First and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983;

- Complete, temporary, or partial loss of reputation;

2

- PLAINTIFFS FAUST and HERNANDEZ's wrongful termination, loss of benefits and pay;

- PLAINTIFF URLI's prolonged alteration of the terms and conditions of employment and/or temporary/partial alteration of employment opportunities; and

- Diminished capacity, incurring special, monetary, and compensatory damages.

3. The aforementioned acts were done expressly or implicitly with the consent, knowledge, and condonation of the DEFENDANT DISTRICT, DEFENDANT BOARD and the INDIVIDUALLY NAMED DEFENDANTS, collectively, DEFENDANTS, to the detriment of PLAINTIFFS FAUST, HERNANDEZ and URLI, (hereinafter collectively referred to as "PLAINTIFFS") as further described below.

4. The aforementioned acts were done through individual, group and conspired acts with the intended and expressed purpose of punishing, silencing, isolating, removing and violating the rights of PLAINTIFFS as protected by statutes, rules and regulations. Said activity was known to government and policy makers and was accepted and supported as policy, practice and custom.

## JURISDICTION AND VENUE

5. The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343.

6. This Court is requested to exercise supplemental jurisdiction with respect to PLAINTIFF's State law claims pursuant to 28 U.S.C.§ 1367.

7. Venue herein is proper under 28 U.S.C. § 1391 (b); the cause of action arose in the Eastern District of New York, and all of the Parties are employed and/or are located in Nassau County, New York State.

3

8.     Despite the fact that PLAINTIFFS have informed the DEFENDANT DISTRICT and the DEFENDANT BOARD of the mistreatment to which they were subjected, the DEFENDANTS have exhibited no concern about this mistreatment and have offered no remedy.

9.     On February 7, 2019, PLAINTIFF URLI filed her original Charge of Discrimination, Charge No. 10200633, with the New York State Division of Human Rights (hereinafter, "NYSDHR"), alleging unlawful discrimination on the basis of PLAINTIFF's sex/gender, hostile work environment, retaliation and sexual harassment. The NYSDHR subsequently cross-filed a charge of discrimination with the United States Equal Employment Opportunity Commission (hereinafter, "EEOC"), under EEOC Charge No. 16GB902714.

10.     On February 21, 2019, PLAINTIFF FAUST filed his original Charge of Discrimination, Charge No. 10200641, with the New York State Division of Human Rights (hereinafter, "NYSDHR"), alleging unlawful retaliation for opposing discrimination based on sex/gender, hostile work environment, retaliation and sexual harassment. The NYSDHR subsequently cross-filed a charge of discrimination with the United States Equal Employment Opportunity Commission (hereinafter, "EEOC"), under EEOC Charge No. 16GB902721.

11.     On February 22, 2019, PLAINTIFF HERNANDEZ filed his original Charge of Discrimination, Charge No. 10200638, with the New York State Division of Human Rights (hereinafter, "NYSDHR"), alleging unlawful retaliation for opposing discrimination based on sex/gender, hostile work environment, retaliation and sexual harassment. The NYSDHR subsequently cross-filed a charge of discrimination with the United States Equal Employment Opportunity Commission (hereinafter, "EEOC"), under EEOC Charge No. 16GB902718.

4

12. On August 27, 2019 the NYSDHR issued a *Determination After Investigation* and determined that "PROBABLE CAUSE exists to believe that Respondent has engaged in or is engaging in the unlawful discriminatory practice complained of" in regards to PLAINTIFF URLI's original complaint filed with NYSDHR.

13. On September 12, 2019 the NYSDHR issued two *Determination After Investigation* and determined that "PROBABLE CAUSE exists to believe that Respondent has engaged in or is engaging in the unlawful discriminatory practice complained of" in regards to PLAINTIFF HERNANDEZ's and PLAINTIFF FAUST's complaints filed with NYSDHR.

14. All three (3) PLAINTIFFS requested dismissals for administrative convenience on all three (3) Charges of Discrimination, Charge No. 10200633, Charge No. 10200641 and Charge No. 10200638. On December 3, 2019 Commissioner Angela Fernandez issued a Notice of Final Order for all three (3) PLAINTIFFS' complaints which adopted the Recommended Order of Dismissal for Administrative Convenience which was issued on November 22, 2019.

15. December 18, 2019,PLAINTIFFS each received a Notice of Right to Sue Within Ninety (90) Days, issued by the EEOC. (**Annexed hereto as Exhibits A, B** and **C** ). Between the date of receipt of the Notice of Right to Sue and the filing date of this complaint, fewer than ninety (90) days have passed.

## PARTIES

16. PLAINTIFF URLI was, at all times relevant to this Complaint, an employee of the DEFENDANT DISTRICT and DEFENDANT BOARD, and is a resident of Massapequa, New York. PLAINTIFF URLI is a 54 year old woman, who was and is qualified to perform the work as the Secretary to DEFENDANT DISTRICT and DEFENDANT BOARD. DEFENDANT URLI, at

5

all relevant times to this Complaint, was the only woman who worked directly with DEFENDANT BOARD and was one of a few women in total that worked for DEFENDANTS.

17.     PLAINTIFF FAUST was, at all times relevant to this Complaint, an employee for DEFENDANT DISTRICT for nearly twenty-four (24) years and is a resident of Oceanside, New York. PLAINTIFF FAUST was unlawfully terminated by DEFENDANTS from his position as General Supervisor for DEFENDANT DISTRICT at a publically held meeting in retaliation for supporting PLAINTIFF URLI regarding her allegations of sexual harassment, discrimination, hostile work environment and retaliation against DEFENDANTS.

18.     PLAINTIFF HERNANDEZ was, at all times relevant to this Complaint, an employee for DEFENDANT DISTRICT for nearly twenty-eight and a half years and is a resident of Massapequa, New York. PLAINTIFF HERNANDEZ was unlawfully terminated by DEFENDANTS from his position as Treasurer for DEFENDANT DISTRICT at a publically held meeting in retaliation for supporting PLAINTIFF URLI regarding her allegations of sexual harassment, discrimination, hostile work environment and retaliation against DEFENDANTS.

19.     During all times relevant to this Complaint, DEFENDANT, TOWN OF HEMPSTEAD SANITARY DISTRICT NO. SEVEN, was, and continues to be, a municipal corporation of the State of New York organized and operating under, and by virtue of the laws of the State of New York. Upon information and belief, DEFENDANT DISTRICT oversees, maintains, manages, supervises, and provides the sanitation services and the sanitation employees, for the Town of Hempstead. DEFENDANT TOWN OF HEMPSTEAD SANITARY DISTRICT NO. SEVEN (hereinafter "DISTRICT NO. 7") is a municipal district located in Nassau County, established by the Town of Hempstead pursuant to chapter 516 of the Laws of 1928. DISTRICT

6

NO. 7's general and legal authority to operate is described in the Nassau County Civil Divisions Act (L 1939, ch 273). DISTRICT NO. 7 is governed by five (5) Commissioners, each of whom is elected for a five (5) year term and is eligible to become a member of the New York State Local Employees Retirement System (NYSLERS).

20.     During all times relevant to this Complaint, DEFENDANT BOARD OF COMMISSIONERS, was and is a board of publically elected Commissioners', operating as part of DEFENDANT DISTRICT. Upon information and belief, the BOARD OF COMMISSIONERS oversees, maintains, manages, supervises, and controls several units, bureaus, and employees.

21.     During all times relevant to this Complaint, upon information and belief, DEFENDANT COMMISSIONER MATTHEW HOROWITZ(hereinafter, "HOROWITZ") was a publically elected Commissioner for DEFENDANT DISTRICT. HOROWITZ, who is sued here in his official and individual capacity, is a male, who, at all times relevant to the within Complaint, served as a Supervisor/Manager to the Board of Commissioners at DISTRICT NO. 7 for DISTRICT NO. 7, of the Town of Hempstead. Upon information and belief, HOROWITZ is/was a policymaker within said District, interacts with other policymakers of the District and reports to the Board of Commissioners, and is therefore charged with overseeing daily operation of DISTRICT NO. 7., and compliance with County, State, and Federal laws and regulation, and is further charged with acting according to said rules, regulations and laws. At all times while serving as Supervisor/Manager to the Board, HOROWITZ engaged in and was notified of the systematic discrimination and retaliation that occurred against the PLAINTIFFS by the DEFENDANTS, had the authority, power and capacity to end systematic abuses and yet chose to not do so.

22.     During all times relevant to this Complaint, upon information and belief, DEFENDANT COMMISSIONER THOMAS LANNING (hereinafter, "LANNING") was a

7

publically elected Commissioner for DEFENDANT DISTRICT. LANNING, sued here in his official and individual capacity, is a male, and at all times relevant to the within Complaint served and/or serves as the Supervisor/Manager of the DEFENDANT DISTRICT NO. 7. Upon information and belief, LANNING is a policymaker within said District, interacts with other policymakers of the DISTRICT, and is charged with overseeing daily operations of DISTRICT NO. 7, and compliance with County, State and Federal laws and regulations, and is further charged with acting according to said rules, regulations and laws. Upon information and belief, while acting within the scope of his duties as a manager/supervisor for DISTRICT NO. 7, LANNING was notified and participated in the systematic discrimination and retaliation against the PLAINTIFFS, had the power and capacity to end such abuses and yet failed to do so.

23.     During all times relevant to this Complaint, upon information and belief, DEFENDANT COMMISSIONER JOHN MANNONE (hereinafter, "MANNONE") was a publically elected Commissioner for DEFENDANT DISTRICT. MANNONE, sued here in his official and individual capacity, is a male, and at all times relevant to the within Complaint served and/or serves as the Supervisor/Manager of the DEFENDANT DISTRICT NO. 7. Upon information and belief, MANNONE is a policymaker within said District, interacts with other policymakers of the DISTRICT, and is charged with overseeing daily operations of DISTRICT NO. 7, and compliance with County, State and Federal laws and regulations, and is further charged with acting according to said rules, regulations and laws. Upon information and belief, while acting within the scope of his duties as a manager/supervisor for DISTRICT NO. 7, MANNONE was notified and participated in the systematic discrimination and retaliation against the PLAINTIFFS, had the power and capacity to end such abuses and yet failed to do so.

8

24.    During all times relevant to this Complaint, upon information and belief, DEFENDANT COMMISSIONER AUSTIN GRAFF (hereinafter, "GRAFF") was a publically elected Commissioner for DEFENDANT DISTRICT. GRAFF, sued here in his official and individual capacity, is a male, and at all times relevant to the within Complaint served and/or serves as the Supervisor/Manager of the DEFENDANT DISTRICT NO. 7. Upon information and belief, GRAFF is a policymaker within said District, interacts with other policymakers of the DISTRICT, and is charged with overseeing daily operations of DISTRICT NO. 7, and compliance with County, State and Federal laws and regulations, and is further charged with acting according to said rules, regulations and laws. Upon information and belief, while acting within the scope of his duties as a manager/supervisor for DISTRICT NO. 7, GRAFF was notified and participated in the systematic discrimination and retaliation against the PLAINTIFFS, had the power and capacity to end such abuses and yet failed to do so.

25.    During all times relevant to this Complaint, upon information and belief, DEFENDANT COMMISSIONER PATRICK DOHERTY (hereinafter, "DOHERTY") was a publically elected Commissioner for DEFENDANT DISTRICT. DOHERTY, sued here in his official and individual capacity, is a male, and at all times relevant to the within Complaint served and/or serves as the Supervisor/Manager of the DEFENDANT DISTRICT NO. 7. Upon information and belief, DOHERTY is a policymaker within said District, interacts with other policymakers of the DISTRICT, and is charged with overseeing daily operations of DISTRICT NO. 7, and compliance with County, State and Federal laws and regulations, and is further charged with acting according to said rules, regulations and laws. Upon information and belief, while acting within the scope of his duties as a manager/supervisor for DISTRICT NO. 7, DOHERTY was notified and

participated in the systematic discrimination and retaliation against the PLAINTIFFS, had the power and capacity to end such abuses and yet failed to do so.

## FACTUAL ALLEGATIONS

26. On December 23, 2013, PLAINTIFF URLI was hired as a Secretary by the DEFENDANT DISTRICT and has worked as the Secretary for DEFENDANTS DISTRICT and BOARD for the past six (6) years.

27. When PLAINTIFF URLI was hired as the Secretary by DEFENDANT DISTRICT, said PLAINTIFF was the only female employed at DEFENDANT DISTRICT, and remained so for all times relevant to the Complaint.

28. At all times during PLAINTIFF URLI's employment, said PLAINTIFF performed her duties as a Secretary in an exemplary fashion, despite the fact that PLAINTIFF URLI's work environment became increasingly hostile, toxic and manifesting in emotional abuse and sexual harassment.

29. PLAINTIFF HERNANDEZ is a Hispanic male who worked for DEFENDANT DISTRICT for twenty-eight and a half (28 ½) years. Prior to his wrongful termination, on or about December 6, 2018 at a public meeting, Mr. Hernandez' final position with the DISTRICT was as Treasure for DEFENDANT DISTRICT.

30. PLAINTIFF FAUST is a male who worked for DEFENDANT DISTRICT for twenty-four (24) years. Prior to his wrongful termination, on or about December 6, 2018, at a public meeting, Mr. Faust's final position with the DISTRICT was as General Supervisor for DEFENDANT DISTRICT.

31.     Beginning in or about August 2018, PLAINTIFF URLI was subjected to hearing and forced to listen to racist, sexist, homophobic, xenophobic, and anti-Semitic slurs, while working with DEFENDANT BOARD and the individually named DEFENDANT COMMISSIONERS.

32.     The sexual harassment that PLAINTIFF URLI experienced at DEFENDANT DISTRICT also began in or about August, 2018, when DEFENDANT HOROWITZ began making sexually inappropriate remarks towards PLAINTIFF URLI in the presence of her Supervisor, PLAINTIFF FAUST, her co-workers, Attorney Keith Corbett and other members of DEFENDANT COMMISSIONERS who sat on DEFENDANT BOARD.

33.     On one occasion, in or about August 2018, PLAINTIFF FAUST was walking PLAINTIFF URLI to her car as they both were leaving for the evening following a board meeting with DEFENDANT BOARD.

34.     Upon seeing PLAINTIFF URLI and PLAINTIFF FAUST walking together, DEFENDANT HOROWITZ insinuated, in the presence of two (2) other Commissioners, DEFENDANT MANNONE and DEFENDANT GRAFF, in addition to PLAINTIFF FAUST, that PLAINTIFF URLI was being unfaithful to her husband with PLAINTIFF FAUST, because said PLAINTIFFS were walking together.

35.     PLAINTIFF FAUST heard DEFENDANT HOROWITZ's sexual insinuation and witnessed PLAINTIFF URLI's visible distress from DEFENDANT HOROWITZ' unwanted sexual harassment.

36.     Feeling humiliated and embarrassed, PLAINTIFF URLI got into her car and left. Upon which PLAINTIFF URLI immediately called her husband to tell him what had occurred. No such sexual innuendos/comments were ever made to men who walk with each other to their cars.

37.     On September 13, 2018, PLAINTIFF URLI was subjected to harassment by DEFENDANT HOROWITZ, when DEFENDANT GRAFF and PLAINTIFF URLI were reading an anonymous letter that was received at DEFENDANT DISTRICT. DEFENDANT HOROWITZ approached, and upon learning that the letter was not about him, DEFENDANT HOROWITZ asked why no one has ever written a letter about him.

38.     DEFENDANT HOROWITZ then asked PLAINTIFF URLI if anyone had ever written a letter to DEFENDANT DISTRICT referring to PLAINTIFF URLI. When PLAINTIFF URLI responded "No", DEFENDANT HOROWITZ stated, in front of DEFENDANT GRAFF, "Why don't we say we're having an affair so they write one about us?" Once again, PLAINTIFF URLI walked away feeling shocked and nervous by the question. PLAINTIFF URLI's sole response to DEFENDANT HOROWITZ was "Nobody would believe that."

39.     PLAINTIFF URLI immediately removed herself from DEFENDANT HOROWITZ' presence and went directly upstairs to the business office at DEFENDANT DISTRICT.

40.     However, DEFENDANT HOROWITZ refused to leave PLAINTIFF URLI alone. DEFENDANT HOROWITZ pursued PLAINTIFF URLI up the stair and into the District Office, all while attempting to continue the unwanted conversation in the presence of PLAINTIFF URLI's Supervisor, PLAINTIFF FAUST and Treasurer, PLAINTIFF HERNANDEZ.

41.     DEFENDANT HOROWITZ tried to include PLAINTIFF FAUST and PLAINTIFF HERNANDEZ in the conversation by stating directly to said PLAINTIFFS, "Did you hear I'm having an affair with Jackie [PLAINTIFF URLI]?" DEFENDANT HOROWITZ then turned to PLAINTIFF URLI and said, "We should have a three-way, me you, and Doug and you can tell me and Doug what to do." DEFENDANT HOROWITZ was referring to PLAINTIFF HERNANDEZ, when DEFENDANT HOROWITZ made reference to "Doug."

42.     Once again, PLAINTIFF URLI was utterly embarrassed and humiliated to the point that PLAINTIFF URLI became nauseous as a result of the fact that DEFENDANT HOROWITZ, as a Commissioner, made such a vile, sexually charged and disrespectful comment at the workplace directed at PLAINTIFF URLI. PLAINTIFF URLI, PLAINTIFF FAUST and PLAINTIFF HERNANDEZ were all in shock as a result of DEFENDANT HOROWITZ' sexually harassing commentary.

43.     Both PLAINTIFFS FAUST and HERNANDEZ heard DEFENDANT HOROWITZ' sexual insinuation and witnessed PLAINTIFF URLI's visible distress from DEFENDANT HOROWITZ' unwanted sexual harassment.

44.     DEFENDANT COMMISSIONERS, PLAINTIFF FAUST, and PLAINTIFF URLI then proceeded to the Boardroom for the scheduled meeting. Once again, DEFENDANT HOROWITZ announced, while at the table with the Commissioners, DEFENDANTS LANNING, MANNONE and GRAFF, "Did you hear I'm having an affair with Jackie [PLAINTIFF URLI] and Doug [PLAINTIFF HERNANDEZ]?" DEFENDANT LANNING responded "no", and DEFENDANT HOROWITZ went on to state, "Yeah, Dan [PLAINTIFF FAUST] is going to tell us what to do, put it on Facebook." None of the other DEFENDANT COMMISSIONERS said anything to DEFENDANT HOROWITZ, about his sexual harassment or even commented on the inappropriateness of DEFENDANT HOROWITZ statements.

45.     Further, on September 13, 2018, near the end of the meeting of DEFENDANT BOARD, as the DEFENDANT COMMISSIONERS were discussing cigars, DEFENDANT HOROWITZ said, "Jackie [PLAINTIFF URLI] looks like a big cigar, isn't she hot?" These comments were unwanted sexual harassment and intensely offensive.

13

46.     PLAINTIFF URLI left as soon as the meeting was over as she was very uncomfortable, humiliated and embarrassed as a result of DEFENDANT HOROWTIZ's sexual comments.

47.     PLAINTIFF URLI called her husband (herein Mr. Urli) as soon as she got into her car and told her husband what had occurred regarding DEFENDANT HOROWITZ's sexual comments and harassment at the Board meeting with DEFENDANT COMMISSIONERS.

48.     Mr. Urli's initial response on hearing about the sexual harassment his wife, PLAINTIFF URLI, was subjected to at the meeting of DEFENDANT BOARD, was to express his desire to come to the DEFENDANT DISTRICT's office to confront DEFENDANT HOROWITZ, however, PLAINTIFF URLI persuaded Mr. Urli to refrain from doing so out of PLAINTIFF URLI's fear of retaliation.

49.     PLAINTIFF URLI remained visibly upset when she returned home that evening after the meeting with DEFENDANT BOARD, as a result of the sexual harassment by DEFENDANT HOROWITZ. PLAINTIFF URLI's children were at home when PLAINTIFF URLI arrived, and upon observing their mother, PLAINTIFF URLI's visible distress, they inquired as to what had occurred.

50.     PLAINTIFF URLI explained to her children what had occurred at the meeting of the DEFENDANT BOARD, specifically DEFENDANT HOROWITZ's sexual harassment in front of the DEFENDANT COMMISSIONERS and the failure of any of the DEFENDANTS to correct DEFENDANT HOROWITZ or come to PLAINTIFFS' defense.

51.     PLAINTIFF URLI's children were appalled at the treatment of their mother, PLAINTIFF URLI, by DEFENDANTS, and became very concerned for PLAINTIFF URLI's well

14

being. The sexual harassment PLAINTIFF URLI was subjected to had a significant negative impact on PLAINTIFF URLI and her household.

52. At this point, PLAINTIFF URLI became very anxious about going to work and particularly attending Board meetings, which was part of PLAINTIFF URLI's job duties.

53. DEFENDANT HOROWITZ's inappropriate and sexually harassing behavior continued. On one occasion, during a General Meeting on or about October 4, 2018, DEFENDANT HOROWITZ sat across from PLAINTIFF URLI and stared/leered at PLAINTIFF URLI for a significant period of time.

54. DEFENDANT HOROWITZ's leering at PLAINTIFF URLI was obvious and intense that PLAINTIFF URLI's Supervisor, PLAINTIFF FAUST, found it "creepy" enough to intercede. PLAINTIFF FAUST asked DEFENDANT HOROWITZ "is everything ok?" And "Can I help you with something?" Feeling supported by PLAINTIFF FAUST speaking out and attempting to correct DEFENDANT HOROWITZ's disturbing behavior, PLAINTIFF URLI mustered up the courage to also address DEFENDANT HOROWITZ, PLAINTIFF URLI mumbled "what the hell?".

55. DEFENDANT HOROWITZ laughed and then eventually stopped staring. However, PLAINTIFFS URLI and FAUST noticed DEFENDANT HOROWITZ wrote "I ♡ Matt" on PLAINTIFF URLI's attendance folder which PLAINTIFF URLI had sent around the meeting for signatures as part of PLAINTIFF URLI's job duties. PLAINTIFFS URLI and FAUST found DEFENDANT HOROWITZ's behavior in said meeting of DEFENDANT COMMISSIONERS to be nothing less than creepy and disturbing. PLAINTIFF URLI was not amused, nor flattered by this unwanted sexual harassment. PLAINTIFF URLI was disgusted and intimidated by DEFENDANT HOROWITZ's actions.

15

56. On another occasion, on or about October 17, 2018, during a Special Meeting, DEFENDANT HOROWITZ persisted with profane and vulgar insinuations in PLAINTIFF URLI's presence, which were clearly directed at said PLAINTIFF.

57. Specifically, on or about October 17, 2018, DEFENDANT HOROWITZ was in the downstairs boardroom waiting for the meeting to begin. As he waited, DEFENDANT HOROWITZ began talking about celebrities he met and hung around when he was in Las Vegas. DEFENDANT HOROWITZ irreverently used the word "Fuck" numerous times as DEFENDANT HOROWITZ talked about Ron Jeremy (a renowned male pornographic movie star) and his time spent at a Bunny Ranch (a renowned house of prostitution in Las Vegas), and a New York City cigar bar. DEFENDANT HOROWITZ also spoke about how he hates Al Sharpton, which prompted Attorney Keith Corbett, who is a white man, to comment that "Sharpton doesn't go to Bensonhurst anymore". DEFENDANT LANNING then chimed in and stated something about needing "a bigger knife."

58. At some point, General Supervisor, PLAINTIFF FAUST, attempting to change the conversation, began speaking about the Halloween event in town and that Assemblyman Curran wanted to know if DEFENDANT DISTRICT would take part in the event. PLAINTIFF FAUST said the event was called "Halloween Fest" and it would follow "Trunk or Treat". DEFENDANT HOROWITZ however, kept referring to the event as "Junk in the Trunk", and he repeated it numerous times.

59. Upon information and belief, DEFENDANT HOROWITZ's reference to "Junk in the Trunk" is a statement in popular slang vernacular directed to women who have large buttocks.

60. Attorney Corbett and the other DEFENDANT COMMISSIONERS witnessed the inappropriate behavior and sexually charged language, but once again, said nothing to DEFENDANT

16

HOROWITZ. In fact, DEFENDANT MANNONE was laughing as he found DEFENDANT HOROWITZ's behavior amusing. DEFENDANT MANNONE then said he would go to anything called "Junk in the Trunk". This conversation was so offensive and disturbing based on DEFENDANT COMMISSIONERS sexual harassment and race discrimination and/or failure to correct said behavior of fellow Commissioner, that once again, PLAINTIFF URLI left that particular Special Meeting visibly shaken and disturbed.

61.    On or about October 19th, 2018, DEFENDANT HOROWITZ came to DEFENDANT DISTRICT to install new computer software. PLAINTIFF URLI felt extreme anxiety and was nauseated as DEFENDANT HOROWITZ stood unusually close to PLAINTIFF URLI on this day, while DEFENDANT HOROWITZ requested that PLAINTIFF URLI provide him with her computer password. DEFENDANT HOROWITZ also kept touching PLAINTIFF URLI on her right arm, telling PLAINTIFF URLI "Come on Jackie, act excited" and "What's wrong with you, you're not acting excited about this?"

62.    DEFENDANT HOROWITZ's close proximity to PLAINTIFF URLI was unnecessary, unwanted and unsolicited. PLAINTIFF URLI was made to feel extremely uncomfortable and anxious as DEFENDANT HOROWITZ touched PLAINTIFF URLI's arm and made undue sexual advances toward PLAINTIFF URLI. PLAINTIFF URLI never gave DEFENDANT HOROWITZ permission to touch her and DEFENDANT HOROWITZ doing so was not only intimidating but offensive.

63.    PLAINTIFF HERNANDEZ witnessed DEFENDANT HOROWITZ's utterly inappropriate touching of PLAINTIFF URLI and equally sexually harassing statements to PLAINTIFF URLI on October 19, 2018, and confirmed that DEFENDANT HOROWITZ did not

17

touch or come in such close proximity to any of the male employees whose software DEFENDANT HOROWITZ updated on said day at DEFENDANT DISTRICT's office.

64. On or about November 1, 2018, while at the General Meeting, DEFENDANT GRAFF suddenly brought up the need for a Sexual Harassment Policy. This was discussed in a very lewd and inappropriate manner during the open session, and then again, in the boardroom with DEFENDANT BOARD. PLAINTIFF URLI was the only female in the room during the discussion regarding the need for a Sexual Harassment Policy. The discussion made PLAINTIFF URLI extremely uncomfortable.

65. Commissioner DEFENDANT DOHERTY asked PLAINTIFF URLI at one point, if PLAINTIFF URLI felt uncomfortable, and PLAINTIFF URLI told DEFENDANT DOHERTY in no uncertain terms, "yes, very!" Then, DEFENDANT HOROWITZ, threatened PLAINTIFF URLI as he stared at her from across the table and stated, "I told them at my job, anyone who accuses me of anything, better be prepared to have that happen to them." DEFENDANT HOROWITZ's comment was clearly a threat. Not knowing what to do, or how to handle the situation, PLAINTIFF URLI left the meeting shaking and crying, as DEFENDANT HOROWITZ was sending a message to instill fear in PLAINTIFF URLI and intimidate her. Said statement by DEFENDANT HOROWITZ can reasonably be interpreted as a threat of sexual assault.

66. PLAINTIFF FAUST was present at the November 1, 2018 meeting and witnessed the disturbing and inappropriate comments by DEFENDANT COMMISSIONERS regarding sexual harassment rather than an earnest discussion regarding adopting a policy to address sexual harassment. PLAINTIFF FAUST witnessed PLAINTIFF URLI shaking and crying as she left said meeting.

18

67. On or about November 2, 2018, DEFENDANT HOROWITZ came to the DEFENDANT DISTRICT's Office for a training on a software program, Office 365. PLAINTIFF URLI had a strong negative physical reaction to being in close proximity to DEFENDANT HOROWITZ as a result of the sexual harassment. PLAINTIFF URLI had and continues to endure in her workplace by DEFENDANT HOROWITZ, since August of 2018.

68. Specifically, PLAINTIFF URLI had a knot in her stomach and a severe headache the entire time DEFENDANT HOROWITZ was at PLAINTIFF URLI's place of work, the District Office, from the stress and anxiety of having to work so closely with DEFENDANT HOROWITZ, and not knowing what DEFENDANT HOROWITZ would do.

69. During the Office 365 training, PLAINTIFF URLI had a difficult time concentrating and PLAINTIFF URLI made sure to refrain from making small talk in hopes that DEFENDANT HOROWITZ would leave quickly once the training was done.

70. PLAINTIFF HERNANDEZ was present for the Office 365 training conducted by DEFENDANT HOROWITZ and witnessed PLAINTIFF URLI's physical discomfort and visible anxiety as a result of DEFENDANT HOROWITZ's training.

71. On or about November 19, 2018, DEFENDANT GRAFF sent out an email accusing PLAINTIFF URLI of lying about an unrelated matter. This email was sent to the DEFENDANT BOARD, DEFENDANT COMMISSIONERS and to Attorney Keith Corbett.

72. Upon information and belief, DEFENDANT GRAFF sent this email in an attempt to intimidate PLAINTIFF URLI and impugn her character in retaliation for PLAINTIFF URLI informing the DEFENDANTS that she was very uncomfortable with her treatment by DEFENDANT HOROWITZ and the BOARD. PLAINTIFF URLI expressed her discomfort via statements, both verbal, as well as via non-verbal cues such as facial expressions and manner.

73.     DEFENDANT GRAFF's actions were also done in an attempt to coerce PLAINTIFF URLI and dissuade her from taking any legal action in light of the sexual harassment and gender discrimination that was transpiring at DEFENDANT DISTRICT towards PLAINTIFF URLI, due to the behavior of DEFENDANT HOROWITZ and MANNONE and the complicit behavior of the rest of the Commissioners.

74.     PLAINTIFF HERNANDEZ has direct personal knowledge of the email circulated by DEFENDANT GRAFF and noted that said email was false and circulated on the heels of PLAINTIFF URLI making a verbal complaint to DEFENDANT COMMISSIONERS regarding her discomfort with the sexual harassment and sexually charged comments of DEFENDANT COMMISSIONERS.

75.     DEFENDANT GRAFF is an attorney, and knew or should have known that DEFENDANTS sexual harassment and gender discrimination was unlawful and subjected DEFENDANTS to liability.   Hence DEFENDANT GRAFF's sudden decision to have DEFENDANT DISTRICT adopt a Sexual Harassment Policy for the first time, and only after DEFENDANT HOROWITZ' despicable and overtly sexually harassing behavior towards PLAINTIFF URLI.

76.     PLAINTIFF URLI felt threatened and very concerned upon receiving the email from DEFENDANT GRAFF, and although PLAINTIFF URLI was fearful to respond, PLAINTIFF URLI felt DEFENDANT GRAFF had crossed the line and gone too far.  As such, PLAINTIFF URLI responded and asked that DEFENDANT GRAFF refrain from referring to PLAINTIFF URLI as a liar.

77.     Once again, Commissioner DEFENDANT DOHERTY was the only Commissioner to speak up and confirm that DEFENDANT GRAFF was out of line.  This attack on PLAINTIFF

URLI's character only further exacerbated her anxiety. PLAINTIFF URLI was literally shaking as she left work that afternoon.

78.    After months of enduring this ongoing level of abuse, on or about November 27, 2018, PLAINTIFF URLI submitted a formal letter of complaint to the attention of PLAINTIFF FAUST, PLAINTIFF URLI's Supervisor, regarding the discrimination, sexual harassment and hostile work environment PLAINTIFF URLI had endured since August 2018 by the Commissioners. PLAINTIFF URLI had reached a point of exhaustion with the continued and unrelenting sexual harassment, gender discrimination and the hostile work environment created and condoned by DEFENDANT COMMISSIONERS and Attorney Keith Corbett.

79.    PLAINTIFF FAUST circulated PLAINTIFF URLI's formal letter of complaint to DEFENDANT COMMISSIONERS and Attorney Keith Corbett on the same day it was submitted to him by PLAINTIFF URLI.

80.    PLAINTIFF FAUST acknowledged PLAINTIFF URLI'S letter of complaint and informed DEFENDANT BOARD and Attorney Corbett of its' receipt. PLAINTIFF FAUST informed PLAINTIFF URLI at the Special Meeting that night, on November 27th, that DEFENDANT BOARD said they would discuss PLAINTIFF URLI'S letter at the December 6, 2018 General Meeting when Counsel would be present. This letter enumerated specific incidents, dates and witnesses. Contrary to what was told to PLAINTIFF FAUST by the BOARD, they did not respond to PLAINTIFF URLI'S letter, or discuss it at the December 6, 2018 General Meeting.

81.    When the evening of December 6, 2018 arrived, instead of receiving a response to her letter, PLAINTIFF URLI was retaliated against, by the wives of the Commissioners. Ms. Marcia Horowitz, the wife of DEFENDANT HOROWITZ, and Ms. Ann-Marie Mannone, the wife of

21

DEFENDANT MANNONE, who were present at the Board meeting, tried to intimidate PLAINTIFF URLI by sitting extremely close to PLAINTIFF URLI and unusually far from their husbands. Said wives of the Commissioners glared at PLAINTIFF URLI throughout the public meeting. Each time PLAINTIFF URLI looked up from taking notes, she was met with stares and dirty looks from both of these women, who were clearly acting as agents for both of their spouses, DEFENDANTS HOROWITZ and MANNONE. PLAINTIFF URLI felt nervous and uneasy as PLAINTIFF URLI attempted to perform her duties. PLAINTIFF HERNANDEZ and PLAINTIFF FAUST witnessed the harassment of PLAINTIFF URLI by Ms. Horowitz and Ms. Mannone.

82.     Later that evening, as PLAINTIFF URLI was walking to the boardroom for Executive Session, Mrs. Horowitz said, in a very harsh tone, "Don't you stare at me!" Fearing for her security, PLAINTIFF URLI did not say a word and just kept walking. Mrs. Horowitz then stated, "Just you wait, just you wait!" PLAINTIFFS FAUST also heard the threat. Again PLAINTIFF URLI did not respond, but PLAINTIFF URLI was very frightened by what Ms. Horowitz said and the manner in which she said it.

83.     PLAINTIFF URLI then had to go directly and sit in the Executive Session with the five Commissioners and District Counsel after these encounters with DEFENDANTS HOROWITZ and MANNONE's wives.

84.     PLAINTIFF URLI was very upset, anxious and fearful during the executive session.

85.     During the public meeting on December 6, 2018, and in retaliation for being named as witnesses in PLAINTIFF URLI's complaint, both General Supervisor PLAINTIFF FAUST and Treasurer PLAINTIFF HERNANDEZ were terminated without cause. These two PLAINTIFFS witnessed some of the sexual harassment PLAINTIFF URLI endured and several other acts of the

22

DEFENDANT COMMISSIONERS towards PLAINTIFF URLI, and were willing to oppose these outrageous and offensive acts.

86. PLAINTIFFS FAUST and HERNANDEZ were terminated **NINE** days after PLAINTIFF URLI submitted her formal letter of complaint regarding the sexual harassment, retaliation, hostile work environment and gender discrimination PLAINTIFF URLI experienced, in which PLAINTIFFS FAUST and HERNANDEZ were named as witnesses. PLAINTIFFS FAUST and HERNANDEZ were terminated without any due process or reason and contrary to the collective bargaining agreement between DEFENDANT DISTRICT and the CSEA Union.

87. PLAINTIFFS FAUST and HERNANDEZ were publically humiliated, as they were terminated without cause in a public meeting, not even an executive session of the Board, contrary to Attorney Corbett's recommendation. All Commissioners voted on the termination of Claimant with only Commissioner Thomas Lanning abstaining from said vote.

88. To further retaliate against PLAINTIFF URLI for submitting her letter of complaint, PLAINTIFF URLI had responsibilities removed from her by DEFENDANTS, without reason. PLAINTIFF URLI was not allowed to attend Special Meetings from November 27, 2018 until in or about January, 2019, and therefore, PLAINTIFF URLI was prevented from taking the minutes at these meetings. PLAINTIFF URLI is the only person with the CSEA Union title bearing the responsibility for taking notes at these meetings.

89. Additionally, PLAINTIFF URLI was being denied the ability to partake in overtime by not being allowed to attend the meetings. Prior to PLAINTIFF URLI's letter of complaint, PLAINTIFF URLI attended every General and Special Board meeting for the four (4) years and eleven (11) months she has been employed with DEFENDANT DISTRICT. These meetings were with the Commissioners and Attorney Corbett.

90. Once the Notice of Claim was served, on or about January 14, 2019, PLAINTIFF URLI was invited to begin attending the Special Board Meetings once again. At the January 16, 2019 Special Meeting, DEFENDANT HOROWITZ joined in on conversations with PLAINTIFF URLI, uninvited, as if nothing was wrong.

91. During the Special Meeting, on or about January 31, 2019, PLAINTIFF URLI was asked to leave the Executive Session as the Commissioners discussed a confidential matter, and when it was time to return, DEFENDANT HOROWITZ was the person who called PLAINTIFF URLI to ask her to return to the boardroom. There were four (4) other Commissioners who could have called PLAINTIFF URLI, especially in light of the pending matter, yet DEFENDANT COMMISSIONERS chose to have DEFENDANT HOROWITZ make the call. Upon information and belief, DEFENDANT COMMISSIONERS permitted DEFENDANT HOROWITZ to call PLAINTIFF URLI back to the Board room to intimidate PLAINTIFF URLI.

92. Then, on February 20, 2019, Supervisor Wayne Vurture told PLAINTIFF URLI that DEFENDANT GRAFF called him and told him not to speak to PLAINTIFF URLI.

93. The removal of PLAINTIFF URLI's responsibilities, isolation from her co-workers, disparate treatment and termination of PLAINTIFFS FAUST and HERNANDEZ, the only support PLAINTIFF URLI had in the office, left PLAINTIFF URLI isolated, extremely anxious, stressed and uneasy.

94. PLAINTIFF URLI has been embarrassed and humiliated innumerable times which has created feelings of self-doubt and powerlessness. It has become very difficult for PLAINTIFF URLI to perform her duties as the environment has become very toxic, unhealthy and tense due to the hostility created by DEFENDANTS.

24

95.     As a result of the sexual harassment, gender discrimination, retaliation, and hostile work environment, PLAINTIFF URLI's sleep is impacted daily, she experiences constant pain in her neck and shoulders as she is fearful of what will transpire each day prior to going to work. This is further exacerbated when the evenings come when PLAINTIFF URLI knows she will have to directly interact with DEFENDANT HOROWITZ, the Board, and District Counsel the following day.

96.     Since PLAINTIFF FAUST and PLAINTIFF HERNANDEZ's wrongful and retaliatory terminations, DEFENDANTS, particularly DEFENDANTS GRAFF and MANNONE, commenced a campaign of providing false, slanderous and libelous information to the media and posting such on their personal Facebook page and YouTube.

97.     Specifically , DEFENDANT GRAFF falsely accused PLAINTIFF FAUST and PLAINTIFF HERNANDEZ of providing dental benefits to former Commissioner Cibellis without payment from Mr. Cibellis. Commissioner Cibellis is the Commissioner that DEFENDANT GRAFF opposed in a contentious political race.

98.     DEFENDANT GRAFF made such claims while fully aware that PLAINTIFFS had no oversight over dental insurance, that it was Wayne Vurture who actually over saw dental insurance, and that Mr. Cibellis in fact had been paying his health insurance benefits out of pocket.

99.     Any clerical error, if one actually existed, fell to the responsibility of Wayne Vurture who continues to be employed in the same position, overseeing health insurance benefits, at DEFENDANT DISTRICT. As such, DEFENDANT GRAFF's after-the-fact contention that PLAINTIFFS' terminations were based on the alleged dental insurance issue is entirely false and pretexual.

25

100.     As a result of DEFENDANTS' retaliation and wrongful termination PLAINTIFF FAUST and PLAINTIFF HERNANDEZ have sustained multiple damages including, but not limited to loss of income, loss of benefits, loss pension, loss of health and dental insurance, mental anguish, mental pain and suffering, damage to name and reputation, loss of comfort, humiliation, shame, embarrassment, extreme mental and emotional harm and stress, and injury to professional reputation.

101.     On February 7, 21 and 22, 2019, PLAINTIFFS URLI, FAUST and HERNANDEZ respectively filed their Charges of Discrimination and Retaliation, with the New York State Division of Human Rights (hereinafter, "NYSDHR"), alleging unlawful retaliation for opposing discrimination based on sex/gender, hostile work environment, retaliation and sexual harassment.

102.     Thereafter, on February 19, 2019 PLAINTIFFS spoke out publicly about their wrongful treatment and disclosed, at a press conference, the filing of their Complaints with the NYSDHR.

103.     March 7, 2019 was the first general meeting after Plaintiffs held a press conference airing their concerns about how they were treated. The Board had asked the sanitation workers to come to that meeting. While the public asked questions, knowing that the media was present, the sanitation workers, who had no first hand knowledge of any facts, and all of whom were men, were encouraged by the Commissioners to heckle Plaintiff Urli and chanted throughout the meeting "Liar liar" and we're unruly. They were not ever called to order by Defendants.

104.     On March 21, 2019 Supervisor Louis Catalanotto came up to speak with Ms. Urli and the accountants about the supervisors sign in sheet. As Ms. Urli was trying to explain the importance of paying them for the correct time, he launched into an abusive tirade. He began yelling and cursing, saying he was "tired of this fucking shit" and "he wasn't putting up with this crap any

26

more" and then stormed out of the office slamming the door. The next morning Ms. Urli informed the board and attorney as to what occurred and that she was concerned for her safety and afraid. They said there would be an investigation. Ms. Urli told them she was leery to inform them because she feared retaliation from her coworkers. No investigation was done as far as Ms. Urli knows. The accountants and Ms. Urli were never questioned about this incident or her complaint.

105.    Four days later on March 26, 2019 Supervisor Licari yelled and cursed at Plaintiff Urli saying, "we're fucking suppose to rearrange our schedules because of you", in the office when Ms. Urli was trying to discuss with him her concerns of being alone in the office from 1:00-4:00 PM once supervisor Vurture retired. He was clearly annoyed that Ms. Urli asked for someone to switch their hours so she wouldn't be alone. Eventually the board decided to give overtime to whoever stayed downstairs until 4:00 PM. Anyone who stayed-supervisors, mechanic or maintenance workers made it clear to Ms. Urli that they were annoyed with her, adding to the level of hostility in the workplace.

106.    From 4/1/19 through 6/30/19 Ms. Urli would have to call the supervisor or mechanic or maintenance worker every day and every time she needed to use the ladies room. This was humiliating and embarrassing to Ms. Urli, especially because she had to call as soon as she got back to her desk. No man on the job was required to do this same thing. It was stressful and Ms. Urli felt self-conscious and rushed every time because she knew they were waiting for her to finish using the restroom so they wouldn't have to answer the phones if they rang.

107.    At the April 11, 2019 board meeting Defendant Graff thanked all the sanitation workers supervisors, mechanics and maintenance staff for doing a good job during the transition period in 2019. The only one not thanked was the only woman, Plaintiff Urli.

27

108.     Also at the April 11, 2019 meeting Megan Mitchell a resident in the District, spoke up in support of Plaintiff Urli and questioned the board members individually. Marcia Horowitz began yelling at Ms. Mitchell and then 11 days later Megan Mitchell was sued by Matt Horowitz for defamation of character. Ms. Mitchell was one of the few people who defended Plaintiff Urli publically.

109.     On May 2, 2019 Defendant Mannone told the public that they could not approve the minutes from the March and April general meetings because Plaintiff Urli did not give them her personal recordings of the meeting. Plaintiff advised the Board to please contact her attorney before that meeting. Rather than heed Plaintiff's request to contact her attorney on this issue, Defendant Mannone purposefully aired this personnel matter spoke about it and embarrassed Ms. Urli in front of the audience.

110.     On June 20, 2019 Plaintiff Urli did not expect to work the entire election with only one 45 minute break. However, she worked 15 hours that day. Which she informed the Commissioners was unfair. Ms. Urli is aware that the male Sanitation workers work 6 hour days and get 1.5 to 2 hours breaks.

111.     On July 10, 2019 and July 11, 2019 Attorney John Ciampoli, attorney for the District, intimidated me Plaintiff Urli by saying she should "talk to Fred and get this case moving" since the newly elected commissioner Samoles was Defendant Graff's and Defendant Mannone's candidate. New commissioner Joseph Samoles also tried to insinuate that Plaintiff may be fired but for now he didn't think he would make that motion. This was a veiled threat and clear attempts at intimidation. Plaintiff felt pressured that if the case wasn't settled soon she was subject to further humiliation, intimidation and/or that she would be fired.

112.     On July 1, 2019, two people started working upstairs in the office with Plaintiff Urli. The totally new woman, Stacey Ward, clerk typist, was told by new supervisor Jonathan Kass, a former sanitation worker of 12 years, about Ms. Urli's case and how she should watch herself around Plaintiff Urli and that the Board didn't like her and other comments all aimed at and making the work environment toxic and again trying to isolate Ms. Urli. This was totally inappropriate and contrary to Plaintiff Urli's rights in the workplace.

113.     On July 31, 2019 Ms. Urli was informed that Defendant Graff was instructing another employee not to tell Plaintiff Urli information and details that were told other employees, confirming that Defendants Graff was intentionally retaliating and isolating Plaintiff Urli and taking steps to exclude her from information necessary to do her job.

114.     Plaintiff Urli received the sexual harassment policy and training on September 6, 2019. Upon receipt of the policy, Plaintiff Urli had to sit in a room of men and Ms. Stacey Ward to watch the video and answer questions as a group with no supervisor or commissioner in the room. It was very uncomfortable because so much of what was discussed was harassment that Plaintiff Urli experienced.

115.     On November 7, 2019, at a general meeting of the Board, the sanitation workers were asked to come to make up members of the audience. They were screaming, cursing and harassing Plaintiff Urli and Plaintiff Faust. The men were drunk and completely out of control to the point that Plaintiff Urli felt unsafe and threatened, as they also threatened other people in the audience. Ms. Urli originally included in the minutes from that general meeting that she told Doherty that she was very concerned and uncomfortable and that it was a toxic environment. Ms. Urli was so concerned that she told Doherty she would leave if the yelling and cursing did not stop. Thereafter, Defendant

29

Graff made Plaintiff Urli remove and delete that section of the minutes before the Board would approved them at the December meeting.

116.     On the December 5, 2019 general meeting day Plaintiff Urli called in sick. Normally, other men are not ever questioned when they call in sick, but on this occasion Plaintiff Urli was. Ms. Urli received a call later that morning from supervisor Catapano questioning if Plaintiff Urli I was going to be sick the whole day and miss the meeting that night. Supervisor Catapano said Defendant Graff asked him to call Plaintiff Urli. Plaintiff Urli felt this was totally inappropriate and felt nervous and intimidated being questioned about it.

117.     Regarding the new CSEA contract, Plaintiff Urli was not included in any negotiations even though she is a shop steward. Ms. Urli received the lowest % salary increase of all the employees and was placed at a step for 5 years as secretary and given that salary, even though she is a 7 yr employee as far as the contract goes. Ms. Urli also had to start contributing to her healthcare at $60 a week. Upon information and belief, Ms. Urli is the only one who has to pay this increased amount from zero dollars a week to $60 a week. Ms. Urli asked Supervisor Tavalaro to speak with Defendant Graff and the Board about this issue. He said he contacted Defendant Graff a few times and still has not gotten a response. When the union members voted to ratify the new contract Ms. Urli was the only "No" vote.

118.     In addition to these incidents, there have been numerous Facebook posts, YouTube videos and abusive, retaliatory, slanderous statements in the press by Defendants Graff and Mannone. The articles, videos and posts were violations of Ms. Urli's privacy as an employee and intended to further harass her, make her suffer and punish her for complaining about the abuse, sexual harassment and discrimination to which she has been subjected.

## AS AND FOR COUNT I

### TITLE VII, CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000e

119.   PLAINTIFFS repeat, reiterate, and re-allege each allegation contained in paragraphs 1 through 118 of this Complaint with the same force and effect as though fully set forth herein. DEFENDANT DISTRICT, DEFENDANT BOARD, DEFENDANT HOROWITZ, DEFENDANT LANNING, DEFENDANT MANNONE, DEFENDANT GRAFF, and DEFENDANT DOHERTY, (hereinafter collectively "DEFENDANTS"), discriminated against the PLAINTIFFS in their employment based on PLAINTIFF URLI's sex/gender, sexual harassment, hostile work environment and against PLAINTIFFS URLI, FAUST and HERNANDEZ in retaliation for opposing sexual harassment, sex/gender discrimination, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended.

120.   As a direct result of aforementioned acts, PLAINTIFFS have been deprived of their rights, deprived of their freedoms, and physically and mentally harmed. PLAINTIFFS have been forced to seek redress in the courts rather than capitulating to the previously mentioned abuse, ridicule, and discrimination.

121.   As a direct result of said acts, PLAINTIFFS have suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of status, loss of opportunities, loss of title, distress, humiliation, embarrassment, psychological trauma, and damage to their reputations as alleged in the preceding paragraphs of the within Complaint.

122.   That by reason of the foregoing, PLAINTIFFS have been subjected to economic losses and psychological injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been

31

damaged in excess of five million ($5,000,000.00) dollars, per PLAINTIFF, as well as punitive damages, costs and attorney's fees.

## AS AND FOR COUNT II

### 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT

123. The PLAINTIFFS repeat, reiterate, and re-allege each allegation contained in paragraphs 1 through 122 of this Complaint with the same force and effect as though fully set forth herein.

124. DEFENDANT DISTRICT, DEFENDANT BOARD, as well as its agents, DEFENDANT HOROWITZ, DEFENDANT LANNING, DEFENDANT MANNONE, DEFENDANT GRAFF, and DEFENDANT DOHERTY, discriminated against PLAINTIFF URLI in her employment based on PLAINTIFF's sex/gender in violation of the Fourteenth Amendment to the United States Constitution.

125. DEFENDANT HOROWITZ, DEFENDANT LANNING, DEFENDANT MANNONE, DEFENDANT GRAFF, and DEFENDANT DOHERTY. acting under color of law, collectively and individually have engaged in actions and abuses which have deprived PLAINTIFFS of rights, privileges and immunities secured by the Constitution including but not limited to the First Amendment, Fourteenth Amendment and other laws in violation of 42 U.S.C. §1983. DEFENDANTS have violated PLAINTIFFS' rights of free speech, free association, equal protection and due process.

126. DEFENDANTS' infringement upon and violation of PLAINTIFFS' rights protected under the Fourteenth Amendment of the United States Constitution was, and is, intended to violate the equal protections clause due to PLAINTIFF URLI's gender and the opposition raised and

32

asserted on her behalf by PLAINTIFFS FAUST and HERNANDEZ.

127.    DEFENDANTS' infringement upon and violation of PLAINTIFFS' rights protected under the Fourteenth Amendment of the United States Constitution was and is intended to mistreat, discriminate and retaliate against PLAINTIFF URLI based on her being a woman and place harm, abuse, retaliation and mistreatment against PLAINTIFFS FAUST and HERNANDEZ based on their opposing the mistreatment being targeted by DEFENDANTS against PLAINTIFF URLI, as provided by the U.S. Constitution and exercise of such rights.

128.    PLAINTIFFS have, and continue to be associated with each other, assert opposition about the abuses suffered by each other, speak truthfully about and protest their mistreatment and discriminatory treatment.

129.    As a direct result of said acts, PLAINTIFF URLI has suffered, and continues to suffer, loss of status, loss of opportunities, loss of title, distress, humiliation, embarrassment, psychological trauma, and damage to her reputation as alleged in the preceding paragraphs of the within Complaint.

130.    That by reason of the foregoing, PLAINTIFFS have been subjected to economic losses and psychological injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess of five million ($5,000,000.00) dollars, per PLAINTIFF, as well as punitive damages, costs and attorney's fees.

### AS AND FOR COUNT III

### <u>42 U.S.C. § 1983 -FIRST AMENDMENT RETALIATION</u>

131.    The PLAINTIFFS repeat, reiterate, and re-allege each allegation contained in paragraphs 1 through 130 of this Complaint with the same force and effect as though fully set forth

herein.

132. DEFENDANT HOROWITZ, DEFENDANT LANNING, DEFENDANT MANNONE, DEFENDANT GRAFF, and DEFENDANT DOHERTY, acting under color of law, collectively and individually have engaged in actions and abuses which have deprived PLAINTIFFS of rights, privileges and immunities secured by the Constitution including but not limited to the First Amendment, Fourteenth Amendment and other laws in violation of 42 U.S.C. §1983. DEFENDANTS have violated PLAINTIFFS' rights of free speech, free association, equal protection and due process.

133. DEFENDANTS' infringement upon and violation of PLAINTIFFS' rights protected under the First Amendment of the United States Constitution was, and is, intended to place a restriction upon PLAINTIFFS' relationship and association with each other.

134. DEFENDANTS' infringement upon and violation of PLAINTIFFS' rights protected under the Fourteenth Amendment of the United States Constitution was and is intended to place a chilling effect upon the exercise of such rights by PLAINTIFFS and other persons as is their right as provided by the U.S. Constitution and the exercise of such rights.

135. PLAINTIFFS have, and continue to be associated with each other, assert opposition about the abuses suffered by each other, speak truthfully about and protest their mistreatment and discriminatory treatment.

136. That by reason of the foregoing, PLAINTIFFS have been subjected to economic losses and psychological injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess of five million ($5,000,000.00) dollars, per PLAINTIFF, as well as punitive

34

damages, costs and attorney's fees.

## AS AND FOR COUNT IV

### 42 U.S.C. § 1983 – FAILURE TO INTERVENE

137.    The PLAINTIFFS repeat, reiterate, and re-allege each allegation contained in paragraphs 1 through 136 of this Complaint with the same force and effect as though fully set forth herein.

138.    Each of the DEFENDANTS, DEFENDANT HOROWITZ, DEFENDANT LANNING, DEFENDANT MANNONE, DEFENDANT GRAFF, and DEFENDANT DOHERTY, acting under color of law, collectively and individually knew or should have known that the discrimination, abuse, mistreatment, retaliation, abuse of their power and authority and other wrongful acts against PLAINTIFFS, without lawful justification, violated their civil rights, to due process and equal protection under the law as guaranteed to them under the First, and Fourteenth Amendments, 42 U.S.C.§2000(e) and 42 U.S.C. § 1983.

139.    Each of the aforesaid DEFENDANTS had the authority, ability and concurrent duty under 42 U.S.C. §1983 to prevent the acts of discrimination, harassment, retaliation, abuse and altering of employment terms and status taken against each of the PLAINTIFFS URLI, FAUST and HERNANDEZ and to further prevent the ongoing escalation and cover-up of said events, which continues and is ongoing as of the date of this complaint. Yet, the individual DEFENDANTS, each acting individually and collectively, neglected to prevent said violations from occurring, and further failed to intervene to protect or aid the PLAINTIFFS, when such violations did in fact occur.

140.    The DEFENDANTS' failure to stop the aforesaid wrongful actions, as set forth in the proceeding paragraphs, constitutes a breach of their duty to do so under U.S.C. §1983.

141. As a result of the failure of the above stated DEFENDANTS to prevent the known violations stated above, the PLAINTIFFS suffered extreme fear, personal humiliation and degradation, emotional and psychological harm, physical injury and conscious pain and suffering from the acts of the DEFENDANTS.

142. That by reason of the foregoing, PLAINTIFFS have been subjected to economic losses and psychological injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess of five million ($5,000,000.00) dollars, per PLAINTIFF, as well as punitive damages, costs and attorney's fees.

## AS AND FOR COUNT V

### 42 U.S.C. § 1983 – MUNICIPAL VIOLATIONS

143. The PLAINTIFFS repeat, reiterate, and re-allege each allegation contained in paragraphs 1 through 142 of this Complaint with the same force and effect as though fully set forth herein.

144. DEFENDANTS DISTRICT and BOARD, acting under color of law, and through their employees, servants, agents and designees, have engaged in a policy, custom, and/or condoned a longstanding practice, which has deprived PLAINTIFF and other female employees of rights, privileges and immunities secured by the Fourteenth Amendment and Title VII. These actions were, and continue to be, condoned by TOWN policy makers, including but not limited to, DEFENDANT DISTRICT, DEFENDANT BOARD, and INDIVIDUAL DEFENDANTS.

145. DEFENDANTS, intentionally and knowingly, as an act of discrimination based on sex/gender, refused to promote female employees, such as the PLAINTIFF, within the BOARD

36

because of their sex/gender. DEFENDANTS also retaliated against PLAINTIFFS for their protestations to sex- or gender-based discrimination.

146. DEFENDANTS DISTRICT and BOARD were further aware of the systematic practice of unlawful sex- or gender-based discrimination within the DEPARTMENT, yet failed to address, remedy, or change said systematic practices, which work to the detriment of PLAINTIFF URLI and other women situated similarly.

147. DEFENDANTS, intentionally and knowingly, materially altered the terms and conditions of PLAINTIFF's employment in retaliation for protesting discriminatory practices within the DEPARTMENT. DEFENDANTS DISTRICT and BOARD were further aware of the systematic practices of unlawful sex- or gender-based discrimination within the DEPARTMENT, yet failed to address, remedy, or change said discriminatory practices.

148. DEFENDANTS DISTRICT and BOARD failed to adequately train or supervise their upper-level supervisors; specifically, DEFENDANTS DISTRICT and BOARD failed to adequately train supervisors on discrimination laws, and failed to exercise adequate supervision over supervisors in order to ensure that discrimination laws were respected.

149. As a result of these discriminatory acts committed by DEFENDANTS DISTRICT and BOARD, and by INDIVIDUAL DEFENDANTS, who were responsible for policy decisions and the enforcement thereof, PLAINTIFF suffered, and continues to suffer, diminished employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, and embarrassment.

150. That by reason of the foregoing, PLAINTIFFS have been subjected to economic losses and psychological injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace,

public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess of five million ($5,000,000.00) dollars, per PLAINTIFF, as well as punitive damages, costs and attorney's fees.

**AS AND FOR COUNT VI**

**ARTICLE 15 OF THE EXECUTIVE LAW OF THE STATE OF NEW YORK § 296**
**(NEW YORK HUMAN RIGHTS LAW)**

151. The PLAINTIFFS repeat, reiterate, and re-allege each allegation contained in paragraphs 1 through 150 of this Complaint with the same force and effect as though fully set forth herein.

152. DEFENDANTS discriminated against the PLAINTIFFS in their employment based on PLAINTIFF URLI's sex/gender, sexual harassment, hostile work environment and against PLAINTIFFS URLI, FAUST and HERNANDEZ in retaliation for opposing sexual harassment, sex/gender discrimination, and hostile work environment in violation of New York Human Rights Law § 296.

153. As a direct result of said acts, PLAINTIFF has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of status, loss of opportunities, loss of title, distress, humiliation, embarrassment, psychological trauma, and damage to her reputation as alleged in the preceding paragraphs of the within Complaint.

154. That by reason of the foregoing, PLAINTIFFS have been subjected to economic losses and psychological injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess of five million ($5,000,000.00) dollars, per PLAINTIFF, as well as punitive

38

damages, costs and attorney's fees.

## AS AND FOR COUNT VII

### 42 U.S.C. §1983 - CONSPIRACY

155.    PLAINTIFFS repeat and reiterate the allegations set forth in paragraphs 1 through 154 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

156.    The above discriminatory and retaliatory actions, pattern and practices based on retaliation by DEFENDANTS, their agents and employees violates PLAINTIFFS' civil rights.

157.    Each DEFENDANT knew or should have known that their actions constituted discriminatory practices based on retaliation.

158.    Each DEFENDANT knew and agreed either openly or tacitly that they would take affirmative steps to retaliate against each PLAINTIFF based on the PLAINTIFFS' opposition to workplace discrimination and agreed to do so with Keith Corbett a non-member of the Board.

159.    None of the DEFENDANTS took action to prevent, divulge or reverse the wrongful plan and actions being taken against PLAINTIFF to discriminate, retaliate, humiliate, and harass her as well as PLAINTIFFS FAUST and HERNANDEZ.

160.    DEFENDANTS, and each one of the individually named DEFENDANTS acquiesced and contributed to the conspiracy to violate PLAINTIFFS' rights; by orchestrating, contributing to and engaging in a conspiracy to requiring PLAINTIFFS to be mistreated, have the terms and conditions of their employment altered and for PLAINTIFFS FAUST and HERNANDEZ to be fired.

161.    Each of the DEFENDANTS condoned the wrongful, discriminatory, reckless, careless and intentional acts taken as set out herein and each had an affirmative responsibility to prevent expose and reverse said wrongful, discriminatory, reckless, careless and intentional acts, but instead

39

joined in this conspiracy against PLAINTIFFS.

162.    As a direct result of said acts PLAINTIFFS have suffered and continue to suffer distress, humiliation, embarrassment, great financial expense and severe damage to their respective reputations.

163.    As a result of the DEFENDANTS' discriminatory and retaliatory acts, PLAINTIFFS are now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and humiliation, and that PLAINTIFFS are entitled to damages sustained to date and continuing in excess of the amount of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

## PRAYER FOR RELIEF

PLAINTIFFS request judgment as follows:

a.  First Cause of Action: in excess of five million ($5,000,000.00) dollars as well as costs and attorney's fees.

b.  Second Cause of Action: in excess of five million ($5,000,000.00) dollars as well as costs and attorney's fees.

c.  Third Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs, and attorney's fees.

d.  Fourth Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs, and attorney's fees.

e.  Fifth Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages and costs.

f.  Sixth Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages and costs.

g.  Seventh Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages and costs.

h.  Attorney's fees and costs, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

i.  Plaintiffs further seek a declaratory judgment against the Defendants stating that their actions were part of a pattern and practice of unlawful, systemic discrimination, and/or retaliation, based on race, color, speech, opposing discriminatory action and association, were retaliatory, and were a municipal custom, policy and practice that was ongoing and continuous against Plaintiff and persons like Plaintiff, and others who are/were employees of Defendant;

j.  Injunctive relief: an injunction requiring Defendants to correct all present and past violations of federal and state law as alleged herein; to allow the Plaintiffs to continue in the position from Defendants' illegally terminated them; to enjoin the Defendants from continuing to act in violation of federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws; and

k.  An Order granting such other legal and equitable relief as the court deems just and proper.

## PLAINTIFFS DEMAND A TRIAL BY JURY

Dated:  Hempstead, New York
        February 21, 2020

LAW OFFICES OF
FREDERICK K. BREWINGTON

By: _____

FREDERICK K. BREWINGTON
CATHRYN HARRIS-MARCHESI
TRICIA S. LINDSAY
*Attorneys for Plaintiffs*
556 Peninsula Boulevard
Hempstead, New York 11550
(516) 489-6959