FILED
CLERK

12:42 pm, Sep 22, 2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JACQUELINE URLI, DANIEL FAUST,
and DOUGLAS HERNANDEZ,

      Plaintiffs,

  -against-

TOWN OF HEMPSTEAD SANITARY
DISTRICT NO. 7, BOARD OF
COMMISSIONERS,
COMMISSIONER MATTHEW HOROWITZ
(in his official and individual capacities),
COMMISSIONER THOMAS LANNING (in
his official and individual capacities),
COMMISSIONER JOHN MANNONE (in his
official and individual capacities),
COMMISSIONER AUSTIN GRAFF (in his
official and individual capacities), and
COMMISSIONER PATRICK DOHERTY (in
his official and individual capacities),

      Defendants.
-------------------------------------------------------------X

**MEMORANDUM AND ORDER**

20-cv-0960 (GRB)(ARL)

  Plaintiffs bring this civil rights employment action against defendants alleging claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and 42 U.S.C. § 1983 ("Section 1983") for sexual harassment, retaliation, Fourteenth Amendment violations, First Amendment retaliation, conspiracy, failure to intervene, and municipal liability. *See* DE 1. Jacqueline Urli, a secretary for the Town of Hempstead Sanitary District No. 7, alleges that Commissioner Matthew Horowitz sexually harassed her, while her

1

colleagues Daniel Faust and Douglas Hernandez[1] allege they were fired in retaliation for supporting her complaint of sexual harassment.

Defendants Town of Hempstead Sanitary District No. 7 ("Sanitary District"), the Board of Commissioners, Matthew Horowitz, John Mannone, Austin Graff, and Patrick Doherty (collectively, "the District Defendants") seek dismissal of all of Urli's claims except Title VII and NYSHRL. DE 38-3; 39-1. The District Defendants seek dismissal of all of Faust's claims, DE 38-3; 39-1, and Commissioner Thomas Lanning seeks to dismiss the complaint against him in its entirety, DE 40-3. For the reasons set forth below, the motion to dismiss is DENIED as to the Title VII and NYSHRL retaliation claims, and GRANTED as to the First Amendment, failure to intervene, *Monell* liability, and conspiracy claims, as well as all claims against Commissioner Lanning.

## I.     PROCEDURAL HISTORY

In February 2019, plaintiffs filed Charges of Discrimination with the New York State Division of Human Rights, which then cross-filed the charges with the EEOC. DE 1 ¶¶ 9-11. On December 18, 2019, the EEOC issued a Notice of Right to Sue Within 90 Days. DE 1 ¶ 15. Plaintiffs timely filed this action on February 21, 2020. DE 1.

On May 12, 2020, the Court dismissed the claims against the individual defendants in their official capacity as well as the Title VII claims against the individual defendants. DE 25. Urli also abandoned her Fourteenth Amendment due process claim under Section 1983. DE 24 at 2. These motions followed.

## II.     FACTS

---

[1] On June 26, 2020, the parties reached a settlement in principle with plaintiff Douglas Hernandez. DE 29-30. Thus, Hernandez's claims are not addressed here.

The relevant facts alleged are as follows: Jacqueline Urli was hired to work as a secretary for the Sanitary District on December 23, 2013. DE 1 ¶ 26. Urli was the only female employee at the time. DE 1 ¶ 27. Daniel Faust was her supervisor and had worked at the Sanitary District for 24 years. DE 1 ¶ 30. Commissioners Matthew Horowitz, Thomas Lanning, John Mannone, Austin Graff, and Patrick Doherty served on the Sanitary District's Board of Commissioners. DE 1 ¶¶ 19, 21-25.

In August 2018, Horowitz saw Urli and Faust walking together toward her car after they left a Board meeting. DE 1 ¶¶ 33-34. Upon seeing them, Horowitz insinuated that Urli was having an affair with Faust. DE 1 ¶ 34. On September 13, 2018, while Urli and Commissioner Graff were reading anonymous letters received by the Sanitary District, Horowitz remarked, "Why don't we say we're having an affair so they write [a letter] about us?" DE 1 ¶ 38. Later that day, Horowitz again made a remark about having an affair with Urli and told her they should have a three-way with Hernandez. DE 1 ¶ 41. At a meeting scheduled that day, Horowitz announced, "Did you hear I'm having an affair with Jackie [Urli] and Doug [Hernandez]?" DE 1 ¶ 44. Commissioner Lanning replied, "No." DE 1 ¶ 44. The Commissioners did not say anything else regarding Horowitz's inappropriate comments. DE 1 ¶ 44. Towards the end of the meeting, as the Commissioners were discussing cigars, Horowitz said, "[Urli] looks like a big cigar, isn't she hot?" DE 1 ¶ 45.

On October 4, 2018, Horowitz sat across from Urli at a meeting and stared directly at her until Faust asked Horowitz, "[I]s everything ok?" and "Can I help you with something?" DE 1 ¶¶ 53-54. Horowitz also wrote "I ♡ Matt" on the attendance folder Urli had distributed at the meeting. DE 1 ¶ 55. At another meeting later that month, Horowitz used the f-word several times and said he hates Al Sharpton. DE 1 ¶ 57. Horowitz also referred to a Halloween event called "Trunk or

3

Treat" as "Junk in the Trunk," which is slang for large buttocks. DE 1 ¶¶ 58-59. Commissioner Mannone laughed and said he would go to anything called "Junk in the Trunk." DE 1 ¶ 60. Commissioner Lanning, who was present at this meeting as well, mentioned something about needing a "bigger knife." DE 1 ¶ 57. On October 19, 2018, Horowitz touched Urli's arm numerous times as he installed new software on her computer and said, "Come on Jackie, get excited," and, "What's wrong with you? You're not acting excited about this?" DE 1 ¶ 61.

On November 1, 2018, during a general meeting at which Commissioner Graff discussed the need for a sexual harassment policy, Urli stated that the conversation made her very uncomfortable. DE 1 ¶ 64. Horowitz – staring at Urli from across the table – replied, "I told them at my job, anyone who accuses me of anything better be prepared to have that happen to them." DE 1 ¶ 65. Urli left the room shaking and crying. DE 1 ¶ 65. Faust was present at the meeting and witnessed Urli leave in tears. DE 1 ¶ 66. Later that month, Graff sent an email to the Board accusing Urli of lying about an unrelated matter. DE 1 ¶ 71.

On November 27, 2018, Urli submitted a formal letter of complaint to Faust regarding the sexual harassment she had experienced at the Sanitary District. DE 1 ¶ 78. The letter named Faust and Hernandez as witnesses. DE 1 ¶ 85. Both were "willing to oppose" the harassment Urli endured. DE 1 ¶ 85. Faust circulated the complaint to Commissioners and the Sanitary District's attorney, Keith Corbett. DE 1 ¶¶ 79-80. The Board said it would discuss Urli's complaint at a public general meeting on December 6, 2018. DE 1 ¶ 80. It did not. Instead, on that day the Board voted to terminate Faust and Hernandez – just nine days after they were named as witnesses in Urli's complaint. DE 1 ¶¶ 85-86. Commissioners Horowitz, Mannone, Graff, and Doherty voted to terminate Faust, while Lanning abstained. DE 1 ¶ 87. As a pretext for firing Faust and Hernandez, Graff and Mannone falsely accused them online of providing dental benefits to former

Commissioner Cibellis without charging him. DE 1 ¶¶ 96-97, 99. Graff and Mannone posted defamatory statements online regarding Urli as well. DE 1 ¶ 118.

After Faust and Hernandez were fired, for approximately two months Urli was not allowed to take notes at Special Meetings – a core job responsibility that allowed her to earn overtime. DE 1 ¶¶ 88-89. On February 19, 2019, plaintiffs held a press conference after filing complaints with the New York State Division of Human Rights. DE 1 ¶ 102. In March 2019, the Commissioners encouraged sanitation workers to heckle Urli and chant "liar, liar" at a meeting attended by the media. DE 1 ¶ 103. Supervisors cursed out at Urli on two occasions later that month. DE 1 ¶¶ 104-05. For three months, Urli was required to call maintenance each time she needed to use the restroom so someone could monitor the phone while she was away. DE 1 ¶ 106. In the new union contract, Urli received the lowest percentage salary increase of all employees and was required to start contributing $60 a week for health insurance. DE 1 ¶ 117.

### III. STANDARD OF REVIEW

These motions are decided under the well-established standards of review for such matters, as set forth in *Gomez v. Stonybrook Univ.*, No. 14-CV-7219 (SJF) (GRB), 2016 WL 1039539, at *4 (E.D.N.Y. Jan. 28, 2016) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82-83 (2d Cir. 2015)) (setting forth standards for deciding motions to dismiss in the context of Title VII claims), *report and recommendation adopted*, No. 14-CV-7219(SJF)(GRB), 2016 WL 1045536 (E.D.N.Y. Mar. 15, 2016), which is incorporated herein by reference. As particularly relevant here, the Second Circuit has observed that "[w]hile a bald and uncorroborated allegation of [First Amendment] retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred" because "motive and intent … are difficult to plead with specificity in a complaint."

*Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994). In addition, for Title VII retaliation claims at the motion to dismiss stage "the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under [the] *McDonnell Douglas* [burden-shifting framework.]" *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015).

## IV.   DISCUSSION
### a. Title VII and NYSHRL Retaliation[2]

Defendants challenge Faust's retaliation claim only as to the adequacy of the allegations relating to protected activity. *See* DE 38-3 at 9-11. "Section 704(a) of Title VII prohibits retaliation against two kinds of protected activity: 'participation' in investigations into discrimination and 'opposition' to conduct prohibited by the statute." *Irons v. Bedford-Stuyvesant Cmty. Legal Servs.*, No. 13-CV-4467 (MKB), 2015 WL 5692860, at *18 (E.D.N.Y. Sept. 28, 2015) (citing *Littlejohn*, 795 F.3d at 316). Under either prong, to establish protected activity Faust "need not establish that the conduct [he] opposed was actually a violation of Title VII, but only that [he] possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute." *Summa v. Hofstra Univ.*, 708 F.3d 115, 126 (2d Cir. 2013) (quoting *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)).

The opposition clause "protects … informal protests of discrimination, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges." *Summa*, 708 F.3d at 126-27 (quoting *Matima v. Celli*, 228 F.3d 68, 78-79 (2d Cir. 2000)). As the Supreme Court has held, "[w]hen an employee communicates to her employer a

---

[2] Both Title VII and NYSHRL retaliation claims are analyzed under the same standard. *See Gomez*, 2016 WL 1039539, at *8 (citing *Garnett-Bishop v. New York Cmty. Bancorp, Inc.*, No. 12-CV-2285 (ADS)(ARL), 2014 WL 5822628, at *23 (E.D.N.Y. Nov. 6, 2014)); *see also Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020) (citing *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013)).

belief that the employer has engaged in ... a form of employment discrimination, that communication virtually always constitutes the employee's *opposition* to the activity." *Crawford v. Metropolitan Government of Nashville & Davidson County*, 555 U.S. 271, 276 (2009) (quotation marks omitted).  However, there is "a significant distinction between merely reporting or investigating other employees' complaints of discrimination, which simply fulfills a personnel manager's daily duties, and communicating to the employer the manager's own 'belief that the employer has engaged in ... a form of employment discrimination[.]'" *Littlejohn*, 795 F.3d at 318 (quoting *Crawford*, 555 U.S. at 276)).  A plaintiff must do more than "simply report or pass along information about another employee's complaint; she must communicate her own opposition to, or criticism of, the challenged behavior" by "supporting another employee in asserting his rights, complaining to the employer, or being critical about the discriminatory employment practices of her employer[.]"  *Irons*, 2015 WL 5692860, at *19-20 (quotation marks omitted) (quoting *Littlejohn*, 795 F.3d at 318).  For example, volunteering to serve as a favorable witness in an internal investigation may constitute protected activity, but merely informing a member of a sexual harassment panel that an employee has a complaint does not.  *Id.*

      Here, Faust alleges he informed the Commissioners of Urli's complaint, which named him as a key witness, and was willing to oppose the sexual harassment directed at Urli.  DE 1 ¶¶ 79-80, 85.  Faust could have served as a crucial witness because he saw Urli leave in tears after Horowitz threatened her that "anyone who accuses me of [sexual harassment] better be prepared to have that happen to them."  DE 1 ¶¶ 64-66.  Finally, Faust confronted Horowitz by asking "Can I help you with something?" when Horowitz stared at Urli during a meeting.  DE 1 ¶¶ 53-54.  "[C]ommunicat[ing] to [one's] employer a belief that the employer has engaged in ... a form of employment discrimination … virtually always constitutes the employee's *opposition*[.]"

7

*Crawford*, 555 U.S. at 276. *See also Irons*, 2015 WL 5692860, at *19-20 (serving as a witness in an internal investigation may constitute protected activity); *Abromavage v. Deutsche Bank Sec. Inc.*, No. 18-CV-6621 (VEC), 2021 WL 1061596, at *4 (S.D.N.Y. Mar. 19, 2021) (providing testimony in an internal investigation can be protected activity under Title VII). Because Faust expressed his opposition to the Sanitary District's sexual harassment, the motion to dismiss Faust's retaliation claims under Title VII and NYSHRL is denied.

### b. First Amendment Retaliation

A plaintiff asserting a First Amendment retaliation claim must establish that: "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)). The analysis for evaluating whether a public employee's speech is protected proceeds as follows:

> A court conducts a two-step inquiry to determine whether a public employee's speech is protected: "The first requires determining whether the employee spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) (citing *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). This step one inquiry in turn encompasses two separate subquestions: "(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as an employee." *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir.2011) (citing *Garcetti*, 547 U.S. at 420–22, 126 S.Ct. 1951). If the answer to either question is no, that is the end of the matter. If, however, both questions are answered in the affirmative, the court then proceeds to the second step of the inquiry, commonly referred to as the *Pickering* analysis: whether the relevant government entity "had an adequate justification for treating the employee differently from any other member of the public based on the government's needs as an employer." *Lane v. Franks*, ––– U.S. ––––, 134 S.Ct. 2369, 2380, 189 L.Ed.2d 312 (quoting *Garcetti*, 547 U.S. at 418, 126 S.Ct. 1951); *see also Pickering*, 391 U.S. at 568, 88 S.Ct. 1731.

*Matthews*, 779 F.3d at 172.

8

To determine whether the public employee speaks as a citizen, the court asks "(A) did the speech fall outside of the employee's 'official responsibilities,' and (B) does a civilian analogue exist?" *Matthews*, 779 F.3d at 173 (citing *Weintraub v. Bd. of Educ. of City Sch. Distr. of City of. N.Y.*, 593 F.3d 196, 203-04 (2d Cir. 2010)). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). "Although the presence or lack of a civilian analogue may be of some help in determining whether one spoke as a citizen, '[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties[.]'" *Montero v. City of Yonkers, New York*, 890 F.3d 386, 397-98 (2d Cir. 2018) (quoting *Lane v. Franks*, 573 U.S. 228, 238 (2014)). Hence, a public employee's speech is not protected if it is "part-and-parcel of his concerns about his ability to properly execute his duties." *Weintraub*, 593 F.3d at 203 (quotation marks omitted). "Sworn testimony in judicial proceedings is a quintessential example of speech as a citizen" regardless of whether the testimony concerns an employee's duties because "[a]nyone who testifies in court bears an obligation, to the court and society at large, to tell the truth." *Lane*, 573 U.S. at 238-40.

Speech is a matter of public concern if it is "fairly considered as relating to any matter of political, social, or other concern to the community." *Montero*, 890 F.3d at 399 (internal quotation marks omitted) (quoting *Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011)). "[S]peech that principally focuses on 'an issue that is personal in nature and generally related to [the speaker's] own situation,' or that is 'calculated to redress personal grievances'— even if touching on a matter of general importance—does not qualify for First Amendment protection[.]" *Montero*, 890 F.3d at 399-400 (citations omitted). Matters implicate the public interest when the plaintiff "wanted to debate issues of discrimination, … [the plaintiff's] suit sought relief against pervasive or systemic

9

misconduct by a public agency or public officials, or … [the plaintiff's] suit was part of an overall effort to correct allegedly unlawful practices or bring them to public attention." *Golodner v. Berliner*, 770 F.3d 196, 203 (2d Cir. 2014) (quoting *Huth v. Haslun*, 598 F.3d 70, 75 (2d Cir. 2010)). "Complaints of gender-based employment discrimination generally fail to qualify as protected speech because such complaints are typically personal in nature and relate solely to the employee's unique employment situation as opposed to systemic discrimination." *Atkinson v. New York State Olympic Reg'l Dev. Auth.*, 822 F. Supp. 2d 182, 193 (N.D.N.Y. 2011) (citing *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993)).

Faust's First Amendment retaliation claim fails for at least two reasons. First, Faust did not engage in speech because there is no allegation that he intended to communicate a particular message to the Commissioners when he forwarded Urli's sexual harassment complaint. To determine whether conduct qualifies as speech, the Court asks whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 205 (2d Cir. 2004) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)) (wearing of masks by white nationalist group is not expressive conduct). "[T]he fact that something is in some way communicative does not automatically afford it constitutional protection." *Zalewska v. Cty. of Sullivan, New York*, 316 F.3d 314, 319 (2d Cir. 2003) (wearing a skirt is not speech because ordinary viewer would glean no particular message from it); *see also Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (waiting for one's attorney inside a courthouse is not expressive conduct). The complaint does not allege that Faust intended to convey a message to the Commissioners by circulating a copy of Urli's complaint, much less a specific and particularized one. DE 1 ¶¶ 79-80. Thus, Faust did not engage in speech when he sent Urli's complaint to the Commissioners.

10

Second, Faust and Urli's First Amendment claims both fail because the subject matter of her sexual harassment complaint does not implicate a matter of public concern. Urli's complaint concerned sexual harassment she had personally experienced. As in *Saulpaugh*, "there is no indication that the plaintiff 'wanted to debate issues of sex discrimination,' that her suit sought 'relief against pervasive or systemic misconduct by a public agency or public officials,' or that her suit was 'part of an overall effort ... to correct allegedly unlawful practices or bring them to public attention.'" 4 F.3d at 143 (quoting *Yatvin v. Madison Metro. School Dist.*, 840 F.2d 412, 420 (7th Cir. 1988)) (public hospital employee who was sexually harassed by supervisor and retaliated against did not raise a matter of public concern even where another employee suffered similar harassment); *see also Corrado v. New York State Unified Ct. Sys.*, No. 12-CV-1748 (DLI) (MDG), 2014 WL 4626234, at *10 (E.D.N.Y. Sept. 15, 2014) (filing an EEOC complaint is not protected speech because charges regarding sexual harassment and retaliation concerned conduct directed solely towards plaintiff rather than system-wide discrimination). Finally, *Lane v. Franks* – which held that an employee engaged in protected speech when he was subpoenaed to testify regarding workplace corruption, 573 U.S. at 232-33, 238 – is inapposite because Faust was not subpoenaed and did not give any testimony under oath. For these reasons, the motion to dismiss Faust and Urli's First Amendment retaliation claims is granted. Since First Amendment association claims are equivalent to free speech claims, plaintiffs' association claims are dismissed as well. *See, e.g., Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 355 (E.D.N.Y. 2008).

### c. *Commissioner Lanning and Remaining Claims*

Because Lanning did not vote to fire Faust, the causation element of Faust's retaliation claims under Section 1983 and NYSHRL is not satisfied. *Naumovski v. Norris*, 934 F.3d 200, 213 (2d Cir. 2019) (Section 1983 claims require but-for causation and the defendant's personal

11

involvement).³  Faust's First Amendment retaliation claim against Lanning fails for the same reason. *Matthews*, 779 F.3d at 172 (First Amendment claim requires causal connection between adverse action and protected speech); *see also Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

Urli's sexual harassment and retaliation claims against Commissioner Lanning fail because Urli does not allege that he engaged in any sexual harassment or retaliatory behavior directed towards her. His mere presence at Board meetings where Urli was sexually harassed cannot give rise to liability, and he cannot be liable for Horowitz's behavior under a theory of supervisor liability because Lanning was not a supervisor – he was simply another elected member of the Board. *See Raspardo v. Carlone*, 770 F.3d 97, 115-16 (2d Cir. 2014) ("[E]ach defendant is only liable under § 1983 when his own actions are independently sufficient to create a hostile work environment."); *Buttaro v. City of New York*, No. 15 CV 5703 (ILG), 2016 WL 4926179, at *9 (E.D.N.Y. Sept. 15, 2016), *on reconsideration in part*, No. 15-CV-5703, 2017 WL 1906725 (E.D.N.Y. May 8, 2017) (Section 1983 actions require that the defendant be a supervisor or have some position of authority); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (liability under NYSHRL also requires personal involvement); *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 316 (E.D.N.Y. 2014) (same).

The failure to intervene claim against Lanning fails as well. At least one court has held that failure to intervene claims are inapplicable in hostile work environment actions, *see DelGadillo v. Town of Cicero*, No. 11 C 7342, 2015 WL 1502410, at *13 (N.D. Ill. Mar. 27, 2015), and plaintiffs present no contrary authority. DE 40-4 at 23-24. Indeed, the Second Circuit has

---

³ The Second Circuit has "not decided whether the but-for-causation standard also now applies to retaliation claims under NYSHRL." *Kleehammer v. Monroe Cty.*, 583 F. App'x 18, 21 (2d Cir. 2014). However, the NYSHRL has "traditionally followed the federal discrimination laws' analytical framework[.]" *Irons*, 2015 WL 5692860, at *17 n.20 (applying but-for causation to NYSHRL retaliation claims); *see also Maynard v. Montefiore Med. Ctr.*, No. 18-CV-8877 (LAP), 2021 WL 396700, at *6 (S.D.N.Y. Feb. 4, 2021) ("Although the Court of Appeals has not held explicitly that but-for causation governs NYSHRL claims, it has implicitly applied that standard on several occasions.").

held there is no "clearly established law that an individual defendant has violated a plaintiff's equal protection rights if he has not personally behaved in such a way as to create an atmosphere of severe or pervasive harassment." *Raspardo*, 770 F.3d at 114-15. Given plaintiffs' failure to identify relevant legal authority supporting their failure to intervene claim, the Court grants the motion to dismiss the failure to intervene claim as to Commissioner Lanning. For the same reason, the Court dismisses the failure to intervene claim as to the other defendants as well.

Insofar as the Section 1983 claim is predicated off First Amendment retaliation, there can be no *Monell* liability because there is no underlying constitutional violation; Section 1983 may not be used to enforce Title VII. *See Hirsch v. New York*, 751 F. App'x 111, 116 (2d Cir. 2018) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) ("A § 1983 action may not, however, be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title VII."). The intra-corporate conspiracy doctrine bars plaintiffs' conspiracy claims because the Commissioners are all agents of the same legal entity, the Sanitary District. *See Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978). Even though Keith Corbett was not a member of the Board, the intra-corporate conspiracy doctrine still applies because as an attorney he acted as an agent of the Sanitary District. The personal interest exception does not apply because posting defamatory information online does not mean defendants pursued a personal interest wholly separate and apart from the Sanitary District's own interests. *See Buttaro*, 2016 WL 4926179, at *11 (personal bias does not fall under the personal interest exception).

### V. CONCLUSION

For the reasons set forth herein, the motions to dismiss are granted in part, and denied in part. This Order does not affect the Title VII and NYSHRL claims for sexual harassment and retaliation brought by Urli against defendants, except as to Commissioner Lanning for whom all claims are dismissed.

September 22, 2021

/s/ Gary R. Brown_____

Gary R. Brown

United States District Judge